UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

JUAN JAVIER RIVERA, and
JOSE PABLO LEMUS, individually and
on behalf of others similarly situated,

        Plaintiffs,

    v.                                                          Civil Action No. 2:05-CV-01518-LP

THE BRICKMAN GROUP, LTD,

        Defendant.

_____

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO CERTIFY
FLSA COLLECTIVE ACTION   AND TO ISSUE NOTICE**

NOW come Plaintiffs and, pursuant to the agreed scheduling order, submit this brief in support of their motion to certify this action as an Fair Labor Standards Act collective action on behalf of similarly-situated employees of Defendant defined as:

> All H-2B workers employed by The Brickman Group, Ltd. during 2003, 2004, and 2005.

**I. STATEMENT OF THE CASE**

Plaintiffs Juan Javier Rivera and Jose Pablo Lemus are Mexican Nationals who, along with hundreds of other foreign workers, were employed by Defendant Brickman as landscape laborers during 2002, 2003, 2004 and 2005. Defendant Brickman obtained permission to import these foreign workers on a temporary basis pursuant to the federal government's "H-2B" visa program (codified at 8 U.S.C. §

1

1101(a)(15)(H)(ii)(b)).[1] Plaintiffs allege four causes of action: (1) violation of the Fair Labor Standards Act (FLSA); (2) violations of the Pennsylvania Wage Payment and Collection Law; (3) breach of contract; and (4) wrongful discharge. The FLSA claim is brought on behalf of all similarly situated H-2B workers employed by Defendant between 2003 and 2005; the Pennsylvania Wage Payment claim is brought on behalf of Defendant's H-2B workers who were employed in Pennsylvania between 2002 and 2005; the third and fourth causes of action pertain only to Plaintiff Rivera individually.

The instant motion seeks preliminary certification of Plaintiffs' FLSA claim as a representative action. That claim asserts that all of the foreign H-2B workers imported by Brickman in 2003, 2004, and 2005 had to incur a number of expenses in order to accept the jobs offered by Defendant Brickman, including visa fees charged by the United States government, recruitment fees charged by Defendant's recruiters, and transportation costs associated with travel between the place of recruitment in Mexico and Brickman's job sites in the United States. Plaintiffs allege that all of these costs were primarily for the benefit of Defendant Brickman and, consequently, operated as *de facto* deductions from Plaintiffs' first week's wages for purposes of measuring compliance with the minimum wage and overtime requirements of the Fair Labor Standards Act. *See Arriaga v. Fla. Pacific Farms, LLC,* 305 F.3d 1228 (11th Cir. 2002) (holding visa and transportation costs incurred by foreign visa workers operated as *de facto* deductions from the workers' first week's wages for purposes of FLSA). As a result of these *de facto* deductions – which amount to more than $500 per worker – Plaintiffs contend that none of Brickman's H-

---

[1] For a general description of the H-2B program see the U.S. Department of Labor's web site at: http://www.dol.gov/asp/programs/guide/tnw.htm . *See also Daylily Farms, Inc. v. Chao,* 357 F.Supp.2d 356, 357-358 (D. Mass. 2005) (describing operation of H-2B program).

2B workers earned the minimum wage and overtime premium mandated by the Fair Labor Standards Act during his first week of employment. Because all of Brickman's H-2B workers are similarly situated with respect to Defendant Brickman's policy of imposing these *de facto* deductions upon H-2B workers, conditional certification of this action as an FLSA collective action is appropriate.

## II.  LEGAL STANDARDS GOVERNING FLSA COLLECTIVE ACTIONS

### A.  PROCEDURE FOR PRELIMINARY CERTIFICATION

Section 16(b) of the FLSA provides that a person may maintain an action on "behalf of himself . . . and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which the action is brought." 29 U.S.C. 216(b). Thus, there are only two requirements to proceed as a representative action: (1) all plaintiffs must be "similarly situated;" and (2) a plaintiff must consent in writing to take part in the suit. This latter requirement means that a collective action follows an "opt-in" rather than an "opt-out" procedure.  *See De Asencio v. Tyson Foods, Inc.,* 342 F.3d 301, 306 (3rd Cir. 2003); *Bosley v. Chubb Corp.,* 2005 WL 1334565 at *2 (E.D. Pa. 2005); *Goldman v. Radioshack Corp.,* 2003 WL 21250571 at *5-6 (E.D. Pa. 2003). The usual Rule 23 class action requirements do not apply to FLSA collective actions. *Goldman,* 2003 WL 21250571 at * 5. *See also Thiessen v. General Electric,* 267 F.3d 1095, 1105 (10th Cir. 2001) (requirements for pursuing an FLSA class action are "independent of, and unrelated to, the requirements for class actions under Rule 23"). When employees are shown to be similarly situated, the district court has the discretion to implement the collective action procedure by facilitating notice to potential plaintiffs. *See Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 172 (1989). Such notice should be "timely, accurate, and informative." *Id.*

Courts in the Third Circuit have long followed a two-stage procedure for determining whether a case should proceed as an FLSA representative action. *See Bosley*, 2005 WL 334565 at *2; *Smith v. Sovereign Bancorp, Inc.,* 2003 WL 22701017 at *2 (E.D. Pa. 2003); *Felix de Asencio v. Tyson Foods, Inc.,* 130 F.Supp. 660, 663 (E.D. Pa. 2001) *aff'd* 342 F.3d 301 (3rd Cir. 2003); *Lusardi v. Xerox Corp.,* 118 F.R.D. 351 (D.N.J. 1987). The first step is conducted early in the litigation when the court has limited evidence regarding the "similarly situated" issue. At this stage the court grants only conditional certification for the purpose of issuing notice and discovery.[2] Because the court has minimal evidence, and the ruling can be reconsidered later, this determination is usually made using a "comparatively liberal standard." *Bosely,* 2005 WL 1334565 at *2; *Goldman*, 2003 WL 21250571 at *6 (same); *Mueller v. CBS, Inc.,* 201 F.R.D. 425, 428 (W.D. Pa. 2001) (same). If the district court 'conditionally certifies' the class, potential class members are given notice and the opportunity to opt-in. .

The second stage is typically precipitated by a motion for "decertification" by the defendant after discovery is largely complete. *Goldman,* 2003 WL 21250571 at * 6. If the additional claimants are similarly situated, the district court allows the representative action to proceed. If the claimants are not similarly situated, the district court decertifies the class and opt-in plaintiffs are dismissed without prejudice. *See, e.g. Moss v. Crawford,* 201 F.R.D. 398, 400, 409-410 (W.D. Pa. 2000) (denying second-stage

---

[2] Courts have disagreed whether, at the initial conditional certification stage, mere pleading is sufficient or whether a plaintiff must provide some "modest factual showing" to support his allegations. *Compare Felix de Asencio,* 130 F.Supp. 2d at 663 (substantial allegations sufficient), *with Smith,* 2003 WL 22701017 at *3 (requiring "a basic factual showing that the proposed recipients of opt-in notices are similarly situated to the named plaintiffs."). The Court need not resolve that issue since Plaintiffs have made a substantial factual showing beyond their pleadings. *See* Plaintiffs' supplemental motion for certification and evidence submitted therewith.

decertification motion and discussing standard applicable to such motions).

The reason for this two-step process with its relatively liberal standard for issuing early notice of the right to opt-in arises, in part, because, unlike Rule 23 class actions where the statute of limitations is tolled for the putative class members upon filing of the suit, the statute of limitations for the members of an FLSA class action is not tolled until each class member affirmatively opts-into the action. *See Hoffman v. Sbarro, Inc.,* 982 F.Supp. 249, 260 (S.D.N.Y. 1997). **Thus it is critical that notice of the right to opt-in issue promptly after the filing of the case.**

### B. THE "SIMILARLY SITUATED" STANDARD

Although the FLSA does not define the term "similarly situated," courts have generally agreed that Plaintiffs must allege that the putative class members were injured as a result of a policy of the employer that affected all class members in a similar fashion. *See Goldman v. RadioShack Corp.,* 2003 WL 21250571 at *6 (E.D. Pa. 2001) (issue is whether "the members of the putative class were together the victims of a single decision, policy or plan."); *Bosley,* 2005 WL 1334565 at * 3 (same); *Felix de Asencio,* 130 F.Supp. 2d at 663 (same); *Mueller v. CBS, Inc.,* 201 F.R.D. 425, 428 (W.D. Pa. 2001); *Sperling v. La Roche,* 118 F.R.D. 392, 428 (D. N. J. 1988) (same).

Some Third Circuit cases have applied a slightly different standard, finding plaintiffs to be similarly situated if they (1) are or have been employed in the same corporate department, division, and location; (2) have advanced similar claims; and (3) have sought substantially the same form of relief." *De Asencio v. Tyson Foods,* 130 F. Supp.2d 660 (E.D. Pa. 2001) *quoting Lockhart v. Westinghouse Credit Corp.,* 879 F.2d 43, 51 (3rd Cir. 1989). This three part test was adopted from an age discrimination case in which the court merely noted that the existence of the above three factors was sufficient to establish that the

plaintiffs were similarly situated; it did not suggest that those criteria had to be met in all cases. *Plummer v. General Electric Co.,* 93 F.R.D. 311, 312 (E.D. Pa. 1981).   This three-part test has not been followed strictly even by the minority of courts that refer to it.  For example, in *Lockhart*, the Third Circuit cited the test, but emphasized that the three factors must be balanced to determine whether there is sufficient homogeneity among the class members and ultimately, applied a test that virtually identical to the "common policy" test used in *Goldman*.  The Court concluded that the fact that plaintiffs alleged that they were injured by a common policy and sought the same relief justified certification of a collective action even though the plaintiffs worked for different branch offices in four different states. *Lockhart*, 879 F.2d at 52 fn. 10.[3]  *See Mershon v. Elastic Stop Nut Division of Harvard Industries, Inc.,* 1990 WL 484152 at *6 (D. N.J. 1990) ("*Lockhart* in fact expanded on [the *Plummer*] rule somewhat, holding that the fact that class members work in different locations does not invalidate a representative action."). Since *Lockhart* was decided in 1989, Third Circuit courts have certified many collective actions involving workers employed in different departments and locations where the injury at issue arises from a common policy or practice.[4]

---

[3] The dissent in *Lockhart* pointed out that the four opt-in plaintiffs worked in Pennsylvania, Georgia, Florida, and Michigan and also worked for different divisions of the company. *Lockhart,* 879 F.2d at 61 (Garth, J., dissenting).

[4] *See, e.g.,De Asencio v. Tyson Foods*, 342 F.3d 301 (3rd Cir. 2003) (conditional certification of 3200 member class at two different chicken processing plants)*; Trotter v. Perdue Farms, Inc.,* 2001 WL 1002448 (D.Del. 2001) (certifying FLSA class of 16,000 production employees working in sixteen different plants in 8 different states); *Goldman v.  Radioshack,* 2003 WL 2125071 at *1-*2 (E.D. Pa. 2003) (certifying class of managers at all Radioshack "Y" stores in Pennsylvania); *Moss v. Crawford,* 201 F.R.D. 398, 400 (W.D. Pa 2000) (class of monitors, adjustors, and invoice reviewers working at different locations).   Ultimately, whether work in the same department or location is critical, depends on the issues in the case. *See Morisky v. Public Service*

Plaintiffs' believe that the first standard (plaintiffs subject to a common policy or practice) is the proper standard to be applied in this action, but under either standard, the proposed class is clearly similarly situated.

## III. CONDITIONAL CERTIFICATION IS APPROPRIATE IN THIS CASE

### A. Plaintiff and the Class Members are Similarly Situated

Plaintiffs clearly meet the first "similarly situated" test exemplified by cases such as *Goldman,* and *Bosley*. All members of the class incurred essentially the same visa, transportation, and recruitment costs associated with accepting work under one of Brickman's H-2B visas. Indeed, the majority of those expenses were imposed on workers as a matter of law, or as a matter of necessity (e.g. transportation). *See Motion, Statement of Facts* ¶¶ 13-17. All class members were equally subject to Defendant's policy decision to require H-2B workers to bear those costs, rather than reimburse them. And all members of the class assert the same FLSA claim – i.e. that the pre-employment visa, transportation, and recruitment costs they incurred operated as *de facto* deductions from their first week's wages causing those wages to fall well below the level required by the FLSA.

Plaintiffs also meet the similarly situated test exemplified by *Lockhart,* 879 F.2d at 52. All of the class members perform essentially the same job, albeit in different locations. More importantly, the differences in location or job duties have absolutely nothing to do with the FLSA claim at issue – i.e.

---

*Electric and Gas Co.,* 111 F.Supp. 2d 493, 498 (D. N. J. 2000) (nothing that where the principal issue in a case is a employer policy that affects workers in different locations and jobs equally, there is no reason a class should not encompass different jobs; but where the central issue is an FLSA-exemption that depends on a worker's job duties, it is critical that all members of the class have the same job duties).

whether the pre-employment costs associated with receiving an H-2B visa should, or should not, be considered *de facto* wage deductions for purposes of the FLSA. All members of the class raise the same claim – i.e. that the pre-employment costs associated with their visas must be considered in determining FLSA compliance. And, finally, all class members seek the same form of relief, i.e. reimbursement of these *de facto* deductions up to the level of the required minimum wage or overtime, an equal amount of liquidated damages and attorneys fees.

Thus under either test, the class affected by Defendant's policy of shifting visa costs to its foreign workers meets the "similarly situated" standard for preliminary certification. That was the conclusion of the court in the only other case that has considered this *de facto* deduction issue on behalf of foreign visa workers. *De Luna-Guerrero v. North Carolina Growers Association,* 338 F.Supp.2d 649, 653- 655 (E.D. N.C. 2004) (certifying FLSA collective action on behalf of 9,000 Mexican workers who alleged that the pre-employment visa and transportation costs they incurred during the 2000, 2001, and 2002 seasons reduced their wages below the FLSA minimum.).

The primary purposes of a Section 216(b) collective action are (1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity. *Hoffmann-La Roche, Inc. v. Sperling,* 493 U.S. 165, 170 (1989); *Moss,* 201 F.R.D. at 410. Both of these purposes would be served by deciding whether H-2B pre-employment expenses should be treated as wage deductions in a single case rather than through multiple individual suits. Indeed, as is made clear by *Arriaga v. Florida Pacific Farms,* 305 F.3d 1128 (11th Cir. 2002), the issue of *de facto* wage deductions is essentially one of law – i.e. whether, under the Department of Labor's regulations, the various pre-employment expenses

incurred by H-2B workers should be viewed as "primarily for the benefit and convenience of the employer" or the employee. *Id.* at 1236-1237.

Defendant's Response to Plaintiffs' [Initial] Motion to Certify a Representative Class (filed August 4, 2005), asserts that the class is not similarly situated, but no where explains the basis for that assertion. Defendant admits that all of its H-2B workers incurred various pre-employment expenses associated with their H-2B visas and that it did not reimburse those expenses or take them into consideration for purposes of the FLSA. *See Defendant's Admissions 3-8.* Nevertheless, in response to Plaintiffs Interrogatories, Defendant asserts that the class is not similarly situated because of:

> differences in the workers' country of origin; differences in the circumstances of workers' travel from Mexico or Guatemala to the United States, and from their homes in those countries to the places from which they departed for the United States, including differences in method, mode, distance, and cost of transportation; differences in the consular practices in Mexico and Guatemala; differences in recruiters, recruiting entities, recruiting practices; differences in representations made by different recruiters to different H-2B workers; differences in places of recruitment; differences in manners and methods of recruitment; differences in forms and/or documents used to recruit workers; differences in where H-2B workers were employed within the U.S.; differences in seasons or combinations of seasons during which H-2B workers were employed; differences in whether workers were given cash advancements and, if so, how much and whether they repaid them; differences in whether H-2B workers were preferred (i.e. repeat) workers or first-time hires; differences in whether workers in whether workers have timely filed their opt-ins to this litigation and when their alleged claims arose; differences in fees paid by different workers, including fees to foreign and domestic governmental agencies, processing fees, fees paid to their recruiters, those paid for assistance in completing forms necessary to the H-2B hiring process; differences in wages and overtime worked; differences in incidental expenses, including subsistence costs while traveling to the U.S.

Def. Interrogatory Ans. #13.   While this list is dauntingly long, it has little in the way of substance. Many of

9

these "differences" have no relevance whatsoever to this action – i.e. whether an H-2B worker came for Guatemala or Mexico or worked in Pennsylvania or Maryland has no bearing on whether the pre-employment expenses at issue were "primarily for the benefit and convenience of the employer." Certainly nothing in the *Arriaga* decision suggests that such differences have any relevance. Most of the other alleged "differences" are relevant only to amount of any given worker's damages. For example, variations in the costs of transportation, visas, and incidental expenses as well as differences in pay rates may affect the amount of damages owed to each worker. Advances made to workers and differences in the number of hours worked the first work week might also affect the amount of damages recovered. But differences in the amount of each class member's damages does not affect the propriety of class certification. The members of a collective action only need to have similar claims, not identical damages. *Mershon,* 1990 WL 484152 at *6 (claims need only be similar, not identical); *Crawford,* 201 F.R.D. at 410 (variations in job duties, locations, billing rates, and method of pay does not defeat collective action where all present the same claim). Besides, whatever the differences in costs, the amount of each workers damages will be calculated using the same simple arithmetic formula.[5]

Finally, the fact that class members may have been recruited by different recruiters and that Brickman denies that the recruiters were its agents does not defeat conditional certification issue. As noted above, the majority of the charges at issue were imposed on all workers by law (visa/passport fees) or

---

[5] Damages can be calculated by determining the amount of minimum wage or overtime owed for the hours worked during the first work week, subtracting the cost of any *de facto* deductions paid by the worker, and adding the wages actually paid. Once the costs are known, this calculation can be made electronically for all class members. Even under the stricter standards of Rule 23, differences in damages does not affect class certification. *See, e.g. Samuel v. Univ. of Pittsburgh,* 538 F.2d 991, 995-996 (3rd Cir. 1976).

practical necessity (transportation from Mexico or Guatemala to the work site) regardless of the recruiter who contacted the worker. *Arriaga* makes clear that whether these charges are for the "primary benefit and convenience of the employer" or the employee is a question of law that is independent of who recruited the workers or what the recruiter may or may not have said. The only pre-employment expense that the statements or actions of the recruiter may have any bearing on is the recruitment fee. *See Arriaga,* 305 F.3d at 1244-1245 (denying reimbursement of recruitment fees because the employer specifically directed its agent not to charge such fees and Plaintiffs failed to prove apparent agency). Even as to that charge, it appears at that Brickman had a uniform policy of authorizing the recruitment fee and informing workers that they had to pay it. *See, e.g.,* Brickman 2004 Handbook at B183-184 (notice to returning workers that they should contact LLS and listing LLS' recruitment fee). Such actions by Brickman clearly establish its responsibility for the recruitment fee under the standard discussed in *Arriaga,* regardless of who the recruiter was. *Arriaga,* 305 F.3d at 1244-45. At the very least this evidence demonstrates that it would be inappropriate at this early conditional certification stage to deny Plaintiffs the opportunity to demonstrate that the differences in recruiters is of no material consequence. As several Pennsylvania courts have noted:

> [Forcing] Plaintiffs to counter every one of Defendant's assertions concerning the similarly situated question at this early stage of the action would 'condemn any large class claim under the [FLSA] to a chicken-and-egg limbo.

*Bosely,* 2005 WL 1334565 at * 5; *Felix de Ascencio,* 130 F.Supp.2d at 663 (same). *See also, Goldman,* 2003 WL 21250571 at * 8 (deferring fact-specific inquiry into alleged differences between class members until second-stage decertification motion and noting that "[d]uring the first-tier inquiry, we ask only whether the plaintiff and the proposed representative class members allegedly suffered from the same

scheme."). Moreover, even if discovery demonstrates factual differences relating to the recruitment charges imposed by Del Al, LLS, and Brickman's Guatemalan recruiters, it is quite likely that at the decertification stage the Court would conclude that it would still be more efficient to resolve all claims in a single case with three sub-classes than in it would be to force Brickman's H-2B workers to file thousands of individual suits.

### B. 2005 Workers Are Properly Included In the Class

Defendant appears to believe that Plaintiffs are not adequate representatives of class members working during the 2005 season, or lack standing to represent 2005 workers. However, Plaintiffs have made a factual showing that H-2B workers incurred the same visa, recruitment, and transportation costs in 2005 that they did in prior years and that Brickman's actions with respect to its 2005 H-2B workers, in particular its policy of not reimbursing those expenses, also remained the same. Thus the FLSA claims presented 2005 workers are identical to those for 2003 and 2004 and there is no reason why their claims should not be included in this action. After all, 29 U.S.C. 216(b) authorizes named plaintiffs to represent all similarly situated workers and 2005 workers are as similarly situated to the named Plaintiffs in terms of the *de facto* deduction issue presented as 2003 and 2004 workers. As long as the similarly situated requirement is met, courts have had no hesitation including all workers with live claims in the class even if they worked at different time periods from the named plaintiff. *See, e.g., Goldman v. Radioshack Corp.*, 2003 WL 21250571 (E.D. Pa. 2003) (certifying in 2003 class of employees who worked on or after December 11, 1999 to be represented by plaintiff who worked from 1985 to September 2001); *Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676, 682 (D. Kan. 2004) (certifying FLSA class of all workers employed during the three years preceding the filing of the complaint even though the named plaintiff only worked for about seven weeks). *See also, De Asencio,* 342 F.3d at 313 (ordering notice to be sent to

12

700 employees hired after the initial notice was issued).   Even under the stricter standards of Rule 23, former employees have frequently been certified to represent classes including current employees. *See, e.g., Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239, 247 (3rd Cir. 1974) cert denied 421 U.S. 1011 (1975): *De Gregorio v. O'Bannon,* 86 F.R.D. 109, 114 (E.D. Pa. 1980).

Besides, even if the class were limited to 2003 and 2004 H-2B workers, it is clear that a very large percentage of those workers return each year. *See*, Declaration of John Skrodinsky, p. 7 at ¶15(j) (Attachment 3 to Statement of Facts) and Exhibit JS-2 thereto (Attachment 4).[6] Thus, many of the 2003 and 2004 workers who opt-in to this case will also have *de facto* deduction FLSA claims for 2005.  It would make no sense to refuse to consider the 2005 claims of workers whose 2003 and 2004 claims are already before the court.  And, as long as the Court will be considering some 2005 claims in any event, efficiency would dictate that it consider the *de facto* deduction claims of all workers who were employed in 2005. *Cf. Braunstein v. Eastern Photographic Laboratories, Inc.,* 600 F.2d 335, 336 (2nd Cir. 1979) (Section 216(b) should be given a liberal construction in light of the broad remedial purpose of the Act as well as the interest of the courts in avoiding multiplicity of suits).

### C. Other Considerations

Because the class members must opt-in, the issue of adequacy of the named Plaintiff is not the same as it is under Rule 23.  Nevertheless, Plaintiff will adequately protect the class.  There are no conflicts between the Plaintiffs' claims and those of the opt-in class members.  Plaintiffs' attorneys have discussed and thoroughly explained to the plaintiffs the nature of a representative action and the potential advantages

---

[6] At least 80.4% of the 2002 H2B workers were expected to return to Brickman in 2003. ¶15(j) and Exhibit JS-2.  Attachments 3 and 4.

and disadvantages to the named plaintiffs by proceeding in a representative action rather than individually. Plaintiffs' counsels have prosecuted numerous class actions and collective actions in the past and are qualified to prosecute this claim. *See* Affidavit of Edward Tuddenham and Declaration of Attorney Arthur N. Read.

Plaintiffs are unaware of any other litigation against Defendant on behalf of its H-2 B landscape workers. Thus, efficiency would be achieved by concentrating all such claims in this litigation.[7]

### D. Notice And Length of Opt In Period

A proposed notice to be sent to the members of the class is attached to Plaintiffs supplemental motion to preliminarily certify a collective action. Plaintiffs propose that class members have at least six months from the time notice issues to file their consent to sue forms. Such a period of time is not unreasonable, particularly given the fact that the class members reside in rural areas outside of the United States where mail delivery may not be as dependable as it is in the United States and given the fact that the class members are migrant workers who spend large portions of the year away from home. Third Circuit courts have authorized similar opt-in periods. *See De Asencio,* 342 F.3d at 313 (ordering the district court to reopen the original four month opt-in period for a reasonable period of time); *Goldman v. Radioshack Corp.,* 2003 WL 21250571 (E.D. Pa. 2003) (approving a six month opt-in period).

Finally, Plaintiff requests that the Court order Defendant to provide Plaintiffs' counsel with the last known address of all members of the class as defined in the notice. These addresses should be provided in

---

[7] *Lemus Guerrero v. The Brickman Group LLC*, Case No. 1:05CV0357 (W.D. Mich filed 2005), raises the same *de facto* deductions issue on behalf of H-2B workers employed in Michigan. However, the employer in that case is a different entity from the Defendant in this case and there is no overlap of claims between the two suits.

computer readable form if Defendant has them in such form. Plaintiffs' counsel will bear the cost of mailing the notices.

## CONCLUSION

For all of the foregoing reasons, this Court should conditionally certify this action as a representative action on behalf of similarly situated H-2B workers employed by Defendant Brickman at any time during the years 2003, 2004, and 2005 and approve the notice attached to Plaintiffs' motion. The Court should also order Defendants to provide plaintiff with the home address and last known addresses of all potential class members, so that Plaintiffs' counsel may issue the notice to the potential class members.

Dated: September 30, 2005

                                    Respectfully submitted,

                                    _____

                                    Arthur N. Read
                                          Attorney Registration No. 29360
                                    Teresa M. Rodriguez
                                          Attorney Registration No. 93912
                                    Manuel A. Boigues
                                          Attorney Registration No. 94931
                                    Friends of Farmworkers, Inc.
                                    924 Cherry St., 4th Floor
                                    Philadelphia, PA 19107-2411
                                    Tel: (215) 733-0878
                                    Fax: (215) 733-0876

                                    Edward Tuddenham
                                    272 W. 107th St. #20A
                                    New York, New York 10025
                                    Tel: (212) 866-6026
                                    Fax: (212) 866-6026

                                    ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I certify that the foregoing Brief in Support of Plaintiffs' Motion to Certify FLSA Collective Action is being served by Electronic mail to the Defendant's attorneys at Dechert LLP as follows:

| | |
|---|---|
| Alan D. Berkowitz | Email: alan.berkowitz@dechert.com |
| Brian E. Hirsch | Email: brian.hirsch@dechert.com |
| Matthew L. Wiener | Email: matthew.wiener@dechert.com |

_____
Arthur N. Read